No. 3600

Second Circuit

—

DAVIS v. MARYLAND CASUALTY CO. ET AL.

—

(February 26, 1931. Opinion and Decree.)

—

Cook & Cook, of Shreveport, attorneys for plaintiff, appellant.

Thatcher, Browne, Porteous & Myers, of Shreveport, attorneys for defendants, appellees.

DREW, J. Plaintiff sued the Maryland Casualty Company, the Hartford Accident & Indemnity Company, and the Standard Accident Insurance Company, for the sum of $1,000, with legal interest thereon from judicial demand until paid, alleging that he took out with the defendant companies policy No. APL-65049, in the sum of $2,500, insuring him against loss for personal injury to third persons done by his Essex automobile. That in suit No. 40,332 on the docket of the First Judicial District Court, entitled "C. A. Hodges v. R. C. Davis," a judgment was rendered against the plaintiff herein in the sum of $3,607.50, with legal interest thereon from May 23, 1925, until paid, and all costs of court. That during the pendency of negotiations with Hodges, his claim could have been settled for $2,504.50, and that plaintiff herein did everything in his power to get the defendant companies to settle for that amount, but that defendants refused to settle unless plaintiff would pay part of the above stated amount.

Plaintiff alleges further that after judgment in the district court, the claim could have been settled for $2,504.50, but that defendants refused to let plaintiff settle it or to settle it themselves, and that he was ultimately required to pay the sum of $1,000 to Hodges in order to settle his liability, after defendants had paid to Hodges $2,500, the amount of the insurance policy.

On trial of the case, plaintiff conceded that the amount paid out by him was $950, instead of $1,000. Plaintiff further alleged that he did not desire to appeal the case from the judgment of the district court, but desired to settle for $2,504.50, which could have been accomplished at that stage of the case, although judgment had been rendered for $3,607.50, but defendants would not permit him to settle and elected to take a devolutive appeal; and that during the pendency of the appeal, the interest accrued at the rate of 5 per cent per annum.

Plaintiff alleges that defendants were in bad faith in refusing to make any settlement in the case, and that their action was prompted by a desire to coerce plaintiff into bearing a part of the loss, which he should not have been required to do; and that he is entitled to recover of defendants the $950 he was forced to pay over and above the amount for which the case could have been settled.

In the alternative, he claims $200.40, which is 5 per cent interest upon the Hodges judgment from the date of judg-

ment in the lower court to the date of payment after final judgment in the Court of Appeal, which court affirmed the judgment of the lower court; and likewise, $109.30, court costs in the Hodges case.

Defendants filed an exception of no cause and no right of action, which was overruled and is not urged in this court by answer to the appeal or otherwise. Defendants answered admitting the issuance of the policy of insurance, as set out by plaintiff; that the record and judgment in the case of Hodges v. Davis are the best evidence of its content; admit that attorneys representing defendants defended that suit, and alleged that plaintiff Davis was also represented in the suit by his attorneys, Cook & Cook.

Defendants admit that negotiations looking to a compromise of the said suit were several times had, and that at one time plaintiff attempted to persuade defendants to pay the sum of $2,500 as a compromise, before the final determination of the suit, and that defendants declined so to do. They deny that such refusal was in bad faith or that there was any obligation upon them to compromise the claim under the policy or otherwise. They admit that they declined to pay the full sum of liability under the policy before final determination of the suit, and admit that a devolutive appeal was taken from the judgment of the lower court.

Defendants further allege that C. A. Hodges, plaintiff in the suit of Hodges v. Davis, 7 La. App. 327, recovered judgment against them in the sum of $2,500, the same being in full release and acquittance of all liability on the part of defendants under said policy; and further allege that they have been acquitted of all interest charges and cost of litigation, for which

they were bound under said policy. All other allegations of plaintiff's petition are denied.

There was judgment in the lower court rejecting the demands of plaintiff, and from that judgment he has appealed.

There is very little dispute over the facts in this case. A policy of insurance for the amount of $2,500 was issued by defendants to plaintiff to recover personal injury to third persons, caused by the Essex automobile of plaintiff. Through a collision with plaintiff's Essex car, one C. A. Hodges was injured, and filed suit against plaintiff for more than $10,000 in the district court of Caddo parish. In accordance with Clause "H" of said policy, plaintiff, Davis, forwarded to the insurers the summons and other process served upon him, and defendants' attorneys proceeded to defend the suit in the name and on behalf of the assured, in accordance with clause 3 of said policy. The law firm of Cook & Cook also signed the pleadings, it being admitted that they were the attorneys of plaintiff, Davis. However, we think the record shows that they took no further part in the trial of the case and charged no fee for their services.

The answer filed to the Hodges suit, denying liability, was verified and sworn to by Davis, the plaintiff herein. There is some testimony by Davis that before the trial in the lower court, the Hodges suit could have been settled for $500. However, the preponderance of testimony is to the contrary, and there is no testimony showing that any such offer was ever brought to the knowledge of the insurers.

Judgment was rendered in the lower court in favor of Hodges and against Davis in the sum of $3,607.50. Hodges, through his attorneys, after judgment in

the lower court, presented a proposition of compromise to Davis, agreeing to settle the suit and claim for $2,504.50, which Davis was eager to accept, but under clause "H" of said policy, which reads as follows:

"The Assured shall give to the Insurers or their authorized agent immediate written notice of any accident causing loss covered hereby and shall also give like notice of claims for damages on account of such accident. If any suit is brought against the Assured to recover such damages, the Assured shall immediately forward to the Insurers every summons or other process served upon him. The Insurers shall have the exclusive right to contest or settle any of said suits or claims. The Assured shall not interfere in any way respecting any negotiations for the settlement of any claim or suit, nor in the conduct of any legal proceedings, but shall, at all times, at the request of the Insurers, render to them all possible cooperation and assistance. The Assured shall not voluntarily admit or assume any liability for an accident, nor incur any expense other than for immediate surgical relief nor settle any claim, except at the Assured's own cost,"

could not do so without the written assent of the insurers, under penalty of forfeiting the policy. He attempted to persuade the insurers to make a settlement by paying to Hodges the sum of $2,504.50, an amount within the amount of the policy, which was for $2,500, plus interest and court costs. The insurers refused to settle unless the insured, Davis, would pay part of the money. There is conflict in the testimony as to what part of the $2,504.50 the insurers wanted Davis to pay, but that is of no importance, as the record clearly shows that Davis did not think he should pay any part of the amount agreed upon, as the amount was within the amount covered by the policy, and that he was so advised by his lawyers.

The insurers took the position that since Davis was liable under the judgment for $1,107.50, above the $2,500 for which they were liable, he should pay some part of the compromise amount. No agreement could be reached and the insurers, in the name of Davis, proceeded to perfect an appeal in the case to this court, where the judgment of the lower court was affirmed.

After final determination of the suit, Hodges sued the insurers and there was entered a judgment by agreement of counsel for the insurers and counsel for Hodges, in favor of Hodges and against the insurers, for the sum of $2,500, fully acquitting them of any further liability under the policy, including all interest and court costs. Later, execution was issued against Davis for the remainder of the judgment, the principal of which was then due by Davis, being $1,107.50, and Davis settled same by compromise by paying $950, in full acquittance of all further liability. He then filed suit against the insurers for $950, alleging that they had acted in bad faith by appealing instead of settling the suit, and did so in an attempt to coerce him into paying part of the compromise, which he was not called upon to pay, as the amount was within the amount due under the policy.

There has been much similar litigation in other states of the union, and the decisions are somewhat conflicting in other states and some entirely irreconcilable. The Supreme Court of this state has only passed on this question one time, that we can find, and that in a case very similar to the one before us, namely: N. O. & C. R Co. v. Maryland Casualty Co., 114 La. 153, 38 So. 89, 91 (L.R.A. (N.S.) 562.) In that suit, the railroad company held a policy of insurance with provisions similar to the

policy under consideration in this case. A man named Singleterry was killed under conditions covered by the policy. The insurer undertook to compromise the damage with his widow and minor child. The widow accepted $700, and signed a release in behalf of herself and as tutrix for the minor. She was not qualified as tutrix at the time, and thereafter, having been qualified as tutrix, she filed suit in behalf of the minor. The insurer elected to defend the suit. The tutrix offered to compromise the suit in behalf of the minor for $800, and the railroad company insisted that the insurer accept the offer. The insurer declined to compromise and elected to litigate. A judgment was obtained in the Court of Appeal for $1516, including costs. The railroad company sued the insurer for the difference between the $800, which the tutrix offered to accept in compromise, and the $1,300, exclusive of costs, for which she received judgment, and which the railroad company had to pay. The policy in that case, as in this case, contained the following clause:

"The insurers shall have the exclusive right to contest or settle any of said suits or claims."

The court, in passing on that case, said:

"Plaintiff, the insurer, was formerly informed of an offer of compromise for $800, and the insured urged the insurer to accept. This presents the next ground of contention. Parties must be held bound as they choose to bind themselves. Negotiations and settlements of suits were left to the insurer. It (the insurer) has the right to decide upon the advisability of resisting the payment of a claim in suit, and the plaintiff appears to have consented not to interfere. The clause of the policy upon this subject has the appearance of being full and clear enough. It (the insurer) reserved the right absolutely not to be interfered with in settlements of suits. This it exercised.

"With the rights stipulated in the contract of insurance, it had authority to refuse to compromise without apprehension of being held for the difference, if thereafter cast by judgment in a larger amount than that at which compromise was offered.

"Rumford v. Fidelity & Casualty Company, 92 Me. 574, 43 Atl. 503, is persuasive upon the point, and holds that the insurer is not liable in the event the amount of the judgment exceed the amount secured by the policy.

"True, the insured must be held to good faith and intelligent action in the premises. Nothing here indicates to the contrary.

"Where a party insurer declines to pay, as in this case, and it results, as here, in a difference of only $500.00, and it appearing, to use a common expression, that the insurer had a 'fighting chance' in defending, we do not think there is ground to charge him with this difference.

"At any rate, in order to be on defending grounds the assured would have to prove not only that it protested against defending the suit, but that it absolutely declined to have anything to do with the defense. This we do not understand is the case, and therefore we must decline to remand in order to enable the assured to prove the character and extent to which it went in order to influence the insurance company to accept the offer to compromise in question. Under the views before expressed, plaintiff's conduct in the premises bars it from sustaining an action for the difference in question."

In Neuberger v. Preferred Accident Insurance Company, 18 Ala. App. 72, 89 So. 90, certiorari denied in 206 Ala. 700, 89 So. 924, the court held the insurer not liable in a similar case, although the case was much stronger than the case before us. The court held in that case that the fact that the insurer after judgment had been recovered against the assured for $6,500, the policy being for $5,000, refused to consent to a settlement of $5,000 of-

féred by the claimant, unless the assured contributed $500 to the settlement and bore the cost of the defense, the insurer threatening to take an appeal (which was alleged by the assured and admitted by the court for the purpose of argument to have been hopeless of success or nearly so), unless the assured made the contribution, did not render a release executed by the assured to the insurer (to conclude the compromise) invalid on the ground that it was executed under duress. The decision was predicated upon the basis that the terms of settlement offered by the insurer to the assured (which were accepted and constituted the basis of the release executed) were to the advantage of the assured as well as the insurer, especially if, as alleged by the assured, the appeal was not reasonably hopeful of success, since, had it failed, the assured would have been compelled to pay $1,500 expenses, which he assumed in the release compromise. The court said that so far as the record disclosed, neither of the parties was laboring under any disability; they were on equal terms, and no fraud was alleged, save only that species of fraud alleged to have existed, which it was contended amounted to coercion under the facts in the case, the insured having the right to control the litigation, and the court asked:

"How can it be said then, that with the defendant threatening to exercise its legal right, that of appeal, which right was given by the plaintiff (assured; right given in the policy), he thereby coerced or compelled plaintiff to release?"

The contention was made by the assured that the right to appeal or not to appeal invested in the insurer by the policy was not an absolute right; that the parties occupied confidential relations and that even though the right was given, it was a fact that there was no chance of reversal; and that the right was not therefore, used in good faith, but as a weapon to force the plaintiff to a settlement. The court said that the reasoning might find favor, but for the one fact in the case that the result of the settlement was to the benefit of the assured. That it equally worked to the benefit of the insurer was said to be no reason within itself that the release was obtained by coercion.

In the case before us, the reasoning in the Alabama case can be well applied, although it is neither admitted nor proved that the appeal taken by the insurers herein was hopeless of success. It is true that this court affirmed the judgment of the lower court, but that does not mean that the appellant did not at least have a fighting chance of reversing the judgment or of reducing the amount of same.

In the case of Henry G. Auerbach et al. v. Maryland Casualty Company, 236 N. Y. 247, 140 N. E. 577, 579, 28 A. L. R. 1294, a leading case on this subject, the insurance company issued to the plaintiff a policy of insurance indemnifying them against loss to the extent of $5,000. One Jane O'Neill was injured under conditions which were covered by the policy. During the pendency of the resulting action, a compromise of $6,500 was proposed. In order to affect the same, the assured offered to contribute $1,500 and insisted that the insurance company should pay the full amount of its probable liability under the policy. The insurance company declined and elected to defend, although it had been willing to contribute $3,500 towards a settlement, provided the assured would pay the balance. Judgment for $20,000 was recovered in the case, and the insured, paid under execution $15,000, and instituted

suit to recover $14,000, the difference between what it would have had to pay if the settlement had been made. An exception of no cause of action was interposed, which was sustained by the lower court, and upon appeal, was reversed by the appellate division of the Supreme Court, 2nd department, which ruling was in turn overruled by the New York Court of Appeal in the cited decision. In so doing, the court said:

"There is nothing in the policy by which the insurance company obligated itself to settle, if an opportunity presented itself. It was given the option to settle, if it saw fit to do so, or to try the action, as it preferred. It, however, was under no legal obligation, either express or implied, to compromise or settle the claims prior to the trial. The plaintiffs, when they accepted the policy, did so with full knowledge of the fact, if an action was brought, that they surrendered to the insurance company absolute, full, and complete control of it, including the settlement or trial. Rumford Falls Paper Co. v. Fidelity & C. Co., 92 Me. 574, 43 A. 503; Schmidt v. Travelers' Ins. Co., 244 Pa. 286, 52 L. R. A. (N. S.) 126, 90 A. 653. They also knew there was no provision in the policy which obligated the insurance company to pay any amount whatever prior to the rendition of a judgment. The policy was one indemnifying them 'against loss or liability imposed by law.' The loss or liability here provided for contemplated the liquidation of a claim, if one were made, by the rendition of a judgment, unless the insurance company saw fit to exercise the option which it had to settle and compromise without a trial.

"It is true the insurance company realized, prior to the trial, that the terms under which a settlement could be had were favorable ones, and that the same ought to be accepted. It so advised the plaintiffs in writing. The advice thus given imposed upon it no legal obligation to make the settlement. It knew that its liability was limited to $5000.00, and while it offered to pay $3500.00 towards a set-tlement, that did not impose upon it the obligation to pay the full amount of the policy prior to the trial. The probability that judgments much larger than $6500.00 would be recovered was as well known to the plaintiffs as to the insurance company. Each of the parties had full knowledge of all the facts. It is not suggested that the plaintiffs were misled by reason of the suppression of any of the facts by the insurance company, or any fraud practiced upon them by it.

"The case in principle cannot be distinguished from McAleenan v. Massachusetts Bonding & Ins. Co., 173 App. Div. 100, 159 N. Y. S. 401, affirmed 219 N. Y. 563, 114 N. E. 114; Levin v. New England Casualty Co., 101 Misc. Rep. 402, 166 N. Y. S. 1055, affirmed 187 App. Div. 935, 174 N. Y. S. 910, which, in turn, was affirmed by this court, 233 N. Y. 631, 135 N. E. 948.

"The insurance company, in refusing to settle the actions, did what it had the legal right to do under the terms of the policy." See, also, Wis. Zinc Co. v. Fidelity & Dep. Co. of Md., 162 Wis. 39, 155 N. W. 1081, Ann. Cas. 1918C, p. 399; Cooley's Briefs on Insurance, vol. 5, pp. 3927 and 3928; and Cooley's Briefs on Insurance, vol. 6, p. 5706.

The only allegation of bad faith alleged in plaintiff's petition is that insurers appealed the case of Hodges v. Davis in an attempt to coerce Davis into paying a part of the amount agreed on as a compromise. The insurers had the right to elect (given them by the policy), to contest the claim or to settle it, and they elected to contest it rather than pay the full amount of the policy. Does that show bad faith? We think not. All that is required of the insurer is good faith in its actions in contesting a claim, and to say that, because they took an appeal they have acted in bad faith, would be to penalize them for exercising a contractual right. It is not unusual for the appellate courts to reverse a judgment of the lower court even on facts, or to reduce or increase the

amount of the award in the lower court; and for us to hold that because defendants did appeal, they are liable for the difference between the judgment finally rendered and the compromise offered would be to hold that the insurers were obligated to settle all claims, within the amount of the policy, before final determination, and that whenever it appealed, it did so at its peril. It would be to read out of the contract between the insurers and the assured the very clause placed therein to protect the insurers from collusion and fraud between the assured and a third person who might be injured.

We think plaintiff has failed to show bad faith on the part of defendants, and the judgment of the lower court rejecting his demands for the difference between the amount of the final judgment and the amount offered to be accepted in compromise, before the final determination of the suit, is correct. It is urged that even after final judgment, the case could have been compromised for $2,504.50. However, the record fails to disclose that any such offer was ever made to either plaintiff or defendants.

The alternative demand for interest and court costs is without merit. All interest and costs were settled for by defendants when they paid the $2,500. Plaintiff has neither paid any interest nor costs, has been fully acquitted of all liability under the judgment, and in fact, the testimony of the attorney for Hodges shows without contradiction, that no demand for either interest or costs was ever made on plaintiff.

The judgment of the lower court is correct; it is therefore ordered, adjudged and decreed that the judgment be affirmed, with costs.