**MID–CONTINENT CASUALTY COMPANY,**
Plaintiff in Error,

v.

**STATE INSURANCE FUND,**
Defendant in Error.

No. 40170.

Supreme Court of Oklahoma.
Sept. 30, 1964.
Rehearing Denied Jan. 5, 1965.

Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, for plaintiff in error.

Paul C. Duncan, Melvin F. Pierce, Oklahoma City, for defendant in error.

BLACKBIRD, Chief Justice.

Plaintiff in error, whose office is in Tulsa, is the successor of General Bonding Company (whose office was in Oklahoma City) as the insurer of the defendant in error, under a public liability and property damage indemnity policy, with a maximum coverage of $20,000.00, that was in force and effect at all times material to this case. The insuring entity will hereinafter be referred to merely as the "insurer", which, during the earlier events herein narrated was General, later succeeded by Mid-Continent.

This action is an outgrowth of earlier litigation in which the insurer ostensibly attempted to fulfill its contract obligation under the policy to defend defendant in error, hereinafter referred to merely as "State Fund", or "Fund", against attempts by A. B. Bone and his wife, Ella Bone, to establish liability on the part of, and obtain from, the Fund, recompense, for damages they suffered in a collision between the automobile in which they were riding, and one driven by a Fund employee, Theodore Riley.

The Bones' efforts were finally successful and culminated in their obtaining verdicts and judgments, affirmed by this Court, during the year 1959, in the sums of $28,-833.00 and $34,000.00, respectively, against Riley and the Fund jointly. For reports of these appeals, see State ex rel. State Ins. Fund v. Bone, Okl., 344 P.2d 562, and State ex rel. State Ins. Fund v. Bone, Okl., 344 P.2d 570, 571.

After the insurer had refused the Fund's demands that it pay the total sum of these judgments, and the Fund had rejected its tender of $20,000.00 to apply thereon, and the Fund, in order to prevent execution from being levied against its property, had been compelled to pay the full amount of said judgments totalling, with interest and costs, the sum of $71,163.82, the Fund brought this action for damages in that amount against the insurer on the theory that the insurer had not discharged its obligation to the Fund by settling the Bones' claims, thus forestalling the entry of said judgments against it. After the trial, at the close of which the insurer's motion for a directed verdict was overruled, verdict and judgment were for the Fund, in the amount prayed for. Thereafter, the insurer perfected the present appeal.

In order to determine the issues of this appeal, it will be necessary to recapitulate some of the extensive factual background of this controversy.

The accident occurred in January, 1953. Soon thereafter the Bones' original attorney, who we will refer to as "Mr. O", contacted one of the Fund's attorneys, we will refer to as "Mr. P", concerning the possibility of

the Fund's recompensing the Bones for their damages without the necessity of court action to compel it.

Without ever receiving any tangible sign of interest in negotiating a settlement of the controversy from Mr. P, or the Fund, or its insurer, Mr. O, in March, 1953, instituted separate damage actions on behalf of Mr. and Mrs. Bone against Riley and the Fund in the District Court of Oklahoma County. One of these was that Court's Cause No. 130,293, entitled: "Ella Bone, Plaintiff vs. Theodore Riley and the State Insurance Fund, Defendants", and the other was said Court's Cause No. 130,294, entitled: "A. B. Bone, Plaintiff vs. Theodore Riley and The State Insurance Fund, Defendants."

The special defenses which the law firm retained by the insurer to represent the Fund, and hereinafter, referred to as "Attorney D" or the "D firm", asserted on its behalf in the two actions, were: (1) The Fund's immunity, as an agency of the State, from liability for the tort of an employee; (2) contributory negligence; and (3) unavoidable casualty.

Besides incorporating the mentioned claim of immunity in its answers, the Fund also asserted said claim in challenges to the court's jurisdiction, which challenges were rejected by one of the Court's judges before the answers were filed. It also asserted the claim, after filing its answer, in motions for judgment on the pleadings in the two cases. After the latter were overruled by another judge of the same court, it was decided to test the rulings of the two district judges on the "immunity" issue by instituting an original action in this court. This latter action was begun by an application for a writ of prohibition, filed in the name of the State on relation of the Fund, as petitioner. It is reported as State ex rel. State Ins. Fund v. District Court of Oklahoma County at 278 P.2d 841. (It is observed that the petitioner therein was represented not only by the D firm and the State Attorney General, but also by one of the Fund's staff attorneys other than Attorney P.) After this Court had, by an ostensibly unanimous opinion promulgated in that case under the name of the late Mr. Justice Ben Arnold, granted the writ and directed dismissal of the action insofar as it concerned the Fund, upon holding therein, that said party, as a department of the State, is not liable in such actions as the Bones had filed (causes numbered 130,293 and 130,294, supra) and that the general statute authorizing the Fund to sue and be sued does not waive the sovereign immunity of the State from such suits, and after this Court had, during January, 1955, denied Respondents leave to file Second Petition for Rehearing in that case, the Bones were able later that year to procure enactment of House Bill No. 875, being a special act of the Twenty-Fifth Oklahoma Legislature purporting to specifically authorize suing the Fund for their damages. (S.L.1955, p. 596.)

Three days after the enactment of H.B. No. 875, supra, or on June 6, 1955, the Bones' attorney, Mr. O renewed the effort he had, two years previously, made to commence negotiations with the Fund for a settlement of his clients' claims for damages by a letter addressed to the Fund's attorney, Mr. P, inclosing a copy of the newly enacted law. In the next letter, Attorney O is shown to have addressed to Attorney P— one dated September 6, 1955—he disclosed that his clients had decided that if they were offered the sum of $10,000.00 and court costs in settlement of the two cases, they would accept such offer. In this letter, Attorney O stated, among other things in substance, that he felt that if the matter were properly presented to it this Court would overrule State ex rel. State Ins. Fund v. District Court of Oklahoma County, supra, but that he realized that this was only his idea, and not that of Attorney P. Despite this intimation of said *Fund's Attorney's belief in the finality of his employer's invulnerability to actions for damages* incurred in the manner of the Bones', Attorney P nevertheless forwarded copies of Mr. O's letter inclosed in letters

dated September 7, 1955, he wrote on behalf of the Fund to the insurer and the D firm, as its counsel. In the latter letter, Attorney P demanded that the insurer accept the Bones' offer to settle the cases for $10,000.00, and stated, in substance, that if this were not done, the Fund would insist on the insurer's paying "all damages, if any, which are rendered against the State Insurance Fund in excess of the policy limits."

Attorney D answered Attorney P's letter with one dated September 22, 1955, in which he stated in substance that he had "referred" the matter of settlement to General and "was authorized to state * * * that it did not * * * desire to attempt any settlement of the * * * cases, but prefers to wait until the legality of the legislative enactment, authorizing these suits, has been determined."

Thereafter, the Bones amended their petition in the district court cases then still pending against Riley (numbered 130,293 and 130,294, supra) by pleading the enactment of H.B. 875, supra, and the authorization purportedly granted them by it to proceed against the Fund, and by setting forth certain new allegations of fact about the Fund, and its operation, contemplated to show that it operated, in all material respects, like a privately-owned insurance company and should be subject to the same legal liability for the torts of its employees. To each of these amended petitions, the Fund, represented by the State Attorney General, and the D firm, and a member of the Fund's legal staff, *other than Attorney P*, filed a combined motion to strike and demurrer in which the position was taken that the enactment of H.B. 875, supra, did not effectively remove the legal obstacle to the maintenance of the actions enunciated in State ex rel. State Insurance Fund v. District Court of Oklahoma County, supra. When such motions and demurrers were overruled in the two cases in January, 1956, the same defense attorneys filed in them Answers and Motions For Judgment On The Pleadings, on behalf of the Fund. A few days after the Motions were overruled

in February, 1956, the same attorneys, together with Attorney P, instituted, on behalf of the State of Oklahoma ex rel. State Insurance Fund, as petitioner, original actions, being this Court's causes numbered 37254 and 37255, respectively, asking this court to assume jurisdiction of the pending district court actions and issue writs of prohibition against Oklahoma County's District Judge Morris and the Bones, as respondents to prevent any further proceedings therein. After hearing oral argument on them, this Court, on February 5, 1957, entered orders, without any explanatory opinion or memorandum, denying said applications. Thereafter, the Oklahoma County District causes numbered 130,293 and 130,294, supra, were tried and resulted in the entry, during May and October, 1957, respectively, of the judgments hereinbefore referred to as having been thereafter affirmed by this Court in 1959.

In the insurer's present appeal from the hereinbefore mentioned judgment in conformity with the verdict assessing against it as damages the sum of the two judgments, previously affirmed by the court against the Fund, in favor of the Bones, and which the Fund was compelled to pay to said judgment creditors in causes numbered 130,293 and 130,294, as aforesaid, the insurer maintains, in substance, that the trial court should have sustained its motion for a directed verdict because there is no evidence that it did not exercise good faith in performing its duties as an indemnity insurer, under the subject policy. One description of such an insurer's obligations, quoted in the briefs of both parties from Boling v. New Amsterdam Casualty Co., 173 Okl. 160, 46 P.2d 916, 919, and incorporated verbatim in the trial court's instruction No. 3, is as follows:

"* * * where an insurance company agrees to indemnify against loss from personal injury claims, and the condition of the contract requires the insured to surrender to the insurance company control of investigations, adjustment of claims, and defenses of

law-suits, and where the insurance company does; pursuant to such contract, take control of such matters, a relationship arises between the insured and the insurer which imposes upon the insurance company the duty owing to the insured to exercise skill, care, and good faith to the end of saving harmless the insured as contemplated by the contract to indemnify. The insurance company must act honestly to effectually indemnify and save harmless the insured as it has contracted to do to the extent, if necessary, that it must make whatever payment and settlement an honest judgment and discretion dictates, within the limits of the policy, and a failure to so act constituted bad faith."

█ In its first counter proposition, the Fund states that the insurer in this case "refused" to consider settling the Bone cases and claims that this refusal was motivated, not by any conviction that the Fund was immune to tort liability, but by said insurer's limited risk. The only proposal for settlement of these cases, of which there is complete and direct proof in the record is one that was transmitted from the Bones' Attorney, Mr. O, and relayed through the Fund's attorney, Mr. P. As hereinbefore indicated, this proposal was received by the insurer on or about September 7th and 8th, 1955. On the dates this offer was made, and refused, (Sept. 7th and 22nd, 1955), although, (as the Fund's brief points out) two district judges, in rulings on motions and demurrers in causes 130,-293 and 130,294, had, in effect, held that the Fund was not immune to such suits for damages on account of the negligence of its employees, those rulings had been rendered ineffective and, in effect, reversed by this Court's opinion in State ex rel. State Ins. Fund v. District Court of Oklahoma County, supra, which said opinion and decision, under our rules, became final, after our denial of the application for leave to file second petition for rehearing in said case on January 25, 1955. Thus, that opinion was then still the governing, and final, court pronouncement on that issue, and, even though approximately three months before that time, or in June, 1955, the Bones had procured enactment of H.B. 875, supra (as hereinbefore mentioned) the insurer's opinion, upon advice of counsel, that the Bones still could not successfully litigate their then alleged causes of action against the Fund, cannot validly be criticized, or deemed incorrect, or considered evidence of bad faith. Furthermore, said counsel's opinion, or advice, as to that special Act's unconstitutionality was later conceded to be correct, as shown by our opinion in State ex rel. State Ins. Fund v. Bone, supra (see 344 P.2d 562, 564).

█ The record indicates, by a copy of a letter dated February 26, 1957, from the D firm to the insurer, that even at that late date, a contribution toward settlement money might have been realized through financial arrangements Theodore Riley might have made; and, there was a statement in a letter dated April 30, 1957, from the insurer's Mr. Allred to the re-insurer indicating that at some unspecified time the Bones' claims might have been settled for the sum of $16,000.00. But, though the Bones had amended their petition, as hereinbefore indicated, and there had been some changes in the membership of this Court, since its opinion in State ex rel. State Ins. Fund v. District Court of Oklahoma County, supra, was promulgated, whether or not these new circumstances might result in this court's rendering a new and different decision on the issue of immunity, opposite in result to the decision it had promulgated in that previous case, was, to say the least, undetermined. In this situation, we think particularly applicable the following expression of the court in City of Wakefield v. Globe Indemnity Co., 246 Mich. 645, 225 N.W. 643, 645:

"Undoubtedly the insurer does not act in bad faith if it refuses settlement * * * if it has legal defenses, *as yet undetermined by a court of last resort,*

which fairly seem applicable * * *." (Emphasis ours.)

To uphold the Fund's position would be the equivalent, to paraphrase the wording of the Court in Davis v. Maryland Casualty Company, 16 La.App. 253, 133 So. 769, 773, of holding that insurers are *obligated to settle all* claims within the amount of the policy before final determination, and that, when they seek relief from the appellate court against judgments adverse to them, they do so at their peril. As that court put it, such a holding " * * * would be to read out of the (insurance) contract * * * the very clause placed therein to protect the insurers from collusion and fraud between the assured and a third person who might be injured."

The Fund's brief frankly admits that prior to this Court's consideration of State ex rel. State Ins. Fund v. District Court of Oklahoma County, supra, the immunity of the Fund from suits, such as the Bones' "was a question of first impression for this Court," but then it asks on "what decision of law" was the insurer relying for its position that the Fund could not be sued? For a short answer to this question we refer to the previously promulgated decisions cited in State ex rel. State Ins. Fund v. District Court of Oklahoma County, supra. While it is true that in this Court's causes numbered 37254 and 37255, the case of Choctaw Pressed Brick Co. v. Townsend, 108 Okl. 235, 236 P. 46, was, for the first time during the extended Bone litigation, called to this Court's attention, it is submitted that there were sufficient differences in the facts concerning the state activity involved there and the one, in which the Fund was engaged at the time the Bones' claim arose, to furnish reasonable ground for grave doubt as to whether that case was applicable to litigation on such claims; and it was not established in this jurisdiction until this Court promulgated its opinion in State Insurance Fund v. Feldgreber, Okl., 317 P.2d 203, on the same day that the verdict was returned in the last of the two Bone cases (#130,294) or October 22, 1957,

that Tit. 85 O.S.1951, sec. 133, had waived the immunity of the Fund to suit. For all that the record indicates, this was too late for any attempt at settlement of the two cases.

Nor can the fact that this court refused to assume jurisdiction and prohibit the Bone cases from going to trial (as it did by order in its causes 37254 and 37255, supra) be considered, under the circumstances of this case, evidence of the insurer's bad faith. The only evidence establishing whether or not that order should have indicated to the insurer, or its counsel, that this court had then decided to depart from the views it had previously expressed in State ex rel. State Ins. Fund v. District Court of Oklahoma County, supra, as to the suability of the Fund, was the insurer's witness, Attorney B. His testimony was to the unequivocal effect that the brief order this court entered in those cases refusing to take jurisdiction and to prohibit, for the second time, causes numbered 130,293 and 130,294 from being tried by the District Court of Oklahoma County, was no indication that this court had *then* decided to depart from the views it had, less than three years previously, expressed in State ex rel. State Ins. Fund v. District Court of Oklahoma County, supra. The reasonableness of Attorney B's conclusion is indicated by State Insurance Fund v. Feldgreber, supra, in which this court again had occasion to consider the correctness of its opinion in State v. District Court of Oklahoma County, supra, but declined to overrule it.

The Fund points to evidence, consisting principally of correspondence, showing that the insurer and/or its counsel realized from their investigation and knowledge of the facts in the Bone cases, that the Fund's defenses therein, other than its claimed immunity from suit, were weak, and that if it was finally held that such suits could be maintained, and these cases were tried, substantial verdicts in favor of the plaintiffs therein would probably result. They cite this as evidence of the insurer's bad faith in refusing to settle the cases. Since the

Fund had a reasonable defense that, not only had not been finally decided against it, but, in the only case that had come before this court involving it, said defense had been upheld, the evidence referred to cannot, under the hereinbefore quoted enunciations in the City of Wakefield Case, be considered evidence of bad faith on the part of the insurer. The insurer is not to be penalized because it could not, under the circumstances of this case, predict that this court would reverse itself after it had postponed final consideration of the immunity issue until after the Bone cases had been tried, and were before this court for initial consideration on their merits, as well as for reconsideration on the immunity issue. In this connection, see St. Paul-Mercury Indemnity Co. v. Martin (C.C.A. 10th Cir.) 190 F.2d 455, and the discussion of a somewhat analogous situation in Georgia Casualty Co. v. Mann, 242 Ky. 447, 46 S.W.2d 777, 779. Also notice Appleman, Insurance Law and Practice, sec. 471, p. 565.

Nor, after thoroughly examining the record—and especially the parts of it referred to thereunder—can we agree with the Fund's second counter-proposition to the effect that the insurer exercised such a lack of regard, or concern, for the Fund's interests, at all stages of the litigation, that a prima facie case of its liability to the Fund was established, and that the trial court committed no error in overruling the insurer's motion for a directed verdict. There can be no doubt that, until after the judgments in the Bone Cases, and the reversal of this court's previous position on the immunity issue, the insurer had a legal defense, up to that time, undetermined by the court of last resort in this jurisdiction. There is no proof of the insurer's lack of sincerity, or good faith, in relying upon the Fund's said immunity, and refusing to settle, because of such reliance. We must therefore conclude that the trial court erred in refusing the insurer's request to direct a verdict in its favor.

Accordingly, said court's judgment is reversed and this cause is remanded for a new trial to be conducted in accordance with the views herein expressed, unless, within 10 days from the date the mandate herein is issued, the State Insurance Fund files a remittitur in the trial court in the sum of $51,163.82, in which event, the judgment will stand affirmed.

HALLEY, V. C. J., and DAVISON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.