(38 South. 89.)

No. 15,323.

NEW ORLEANS & C. R. CO. v. MARYLAND CASUALTY CO.*

(Jan. 16, 1905.)

INDEMNITY INSURANCE — JUDGMENT AGAINST INSURED—ACTION AGAINST INSURANCE COMPANY—CLAIM BY MINOR—COMPROMISE WITH PARENT—SETTLEMENT BY INSURANCE COMPANY.

1. The plaintiff, holder of a policy in the defendant company, has the right to recover an amount paid by it under the terms of the insurance policy, plus the costs.

2. The insurance company reserved the right to settle any claim for loss incurred up to a stated amount plus the costs.

3. A loss was settled by defendant insurance company ex parte with the mother of the minor, and the receipt purported to include the minor's claim.

4. Subsequently an offer was made by the tutrix of the minor to accept a stated amount as a compromise.

5. Acceptance of the offer was advised by the railroad company. The insurance company declined to accept it, as it had the right, by agreement, forming part of policy, to control and reject the compromise offered. The tutrix continued in the prosecution of the suit, which resulted in judgment in amount of $500 over the

*Rehearing denied February 27, 1905.

amount the tutrix had offered to accept in the compromise.

It being part of the condition of insurance that the insurance company retained the right to settle suits as it chose, it (the insurance company) cannot be held for said difference.

6. The insurance company claims to deduct from the judgment the amount it chose to pay in the ex parte (and not binding as relates to the minor) compromise with the widow. The insurance company had no right to enter into a compromise as relates to private claims in the manner here.

The insurance company has the right to settle and compromise suits. It has no right to pay claims not in suit to persons with right and others without right, combine them, and afterward plead them as a credit on a judgment regularly obtained.

(Syllabus by the Court.)

Certiorari to Court of Appeal, Parish of Orleans.

Action by the New Orleans & Carrollton Railroad Company against the Maryland Casualty Company. Judgment for defendant was affirmed by the Court of Appeal, and it applies for certiorari or writ of review. Dismissed.

Purnell Mitchell Milner, for applicant. Dart & Kernan, for respondent.

BREAUX, C. J. Plaintiff in the court below (respondent here) brought this suit against the defendant the Maryland Casualty Company (relator here) for judgment for loss sustained, and which it claims is secured by the policy which it (the New Orleans & Carrollton Company) held.

The amount paid by the railroad company, and which it claims, and for which it obtained judgment before the Court of Appeal, is $1,516.10, including costs. After compromise had been made, and payment thereunder received, the widow, having, after payment, qualified as tutrix, brought suit against the railroad a second time; this time, as tutrix, availing herself of the fact that she was not tutrix when the compromise was made, and obtained judgment for said sum, which was paid to her as required by the policy which the railroad company held.

Hereafter these two companies will be referred to, one as the "Railroad Company," the other as the "Insurance Company." The railroad company was insured in the Maryland Casualty Company against "loss from common-law or statutory liability for damages on account of bodily injuries, fatal or nonfatal, accidentally suffered by an employé of assured, resulting in his injury or death," and one of the conditions was, if suit was brought for damages, the insuring company was to defend the suit in the name of the railroad company, settle the claim, and pay.

Another condition of insurance was that the assured should not settle any claim, nor incur any expense, nor interfere in any settlement or proceeding, without the written consent of the insurance company.

One of the railroad company's hands having met with an accident whilst in its employment, which resulted in his death, the notice required was timely given by the railroad company to the insurance company. The widow of the deceased workman settled the claim with the insurance company, and accepted therefor the said sum of $700, represented by the receipt, a copy of which is inserted in our opinion infra. This receipt, which she signed, sets forth that she received the amount both as widow and as tutrix in full satisfaction of all claims, whether as widow or as tutrix—to copy from her receipt: "For myself as widow and natural tutrix of my child."

We have seen the widow had not qualified as tutrix, and had no right at the time to sign a receipt in the capacity of tutrix. It follows from this that payment was made to one not entitled to give full acquittance, in so far as the minor child was concerned.

The railroad company insists that the whole amount of the receipt should be eliminated from all consideration in the settlement between it and the relator, because the compromise entered into between the insurance company with the widow was illegal, and could not bind it (the railroad company) in any way; that this is chargeable to the insurance company's error in the premises, or possibly to its neglect.

On the other hand, the insurance company's insistence is that the amount of $700 went to pay the widow for her part of the damages.

Another ground of complaint is that some time before the widow in question brought suit to recover for her minor child, she, as tutrix, now that she had become tutrix, offered to compromise this claim—i. e., claim of her minor child—for the sum of $800, a fact made known by the railroad company and its (the railroad company's) desire to settle on that basis to the insurance company; but that the latter company declined to accept the offer, and determined to let the tutrix sue and it to defend the suit.

The suit was brought by the tutrix, and judgment obtained for the sum of $1,300, with the costs amounting to $1,516.10, which the railroad company in the suit before us for decision now claims as due it on the ground that the whole of this amount is due by the insurance company by reason of the fact that at the instance of the latter the railroad company defended the suit which was lost, and, in consequence, rendered the latter insurance company liable for the difference between the $800 the tutrix offered to accept as a compromise and the $1,300 which she afterward gained in the suit, as before mentioned.

In the suit to which reference is made by these companies—that is, Lettie Thompson, widow of L. E. Singleterry, Tutor, for the Use, etc., v. New Orleans & Carrollton Railroad Company, 108 La. 52, 32 South. 177—the compromise in question between the widow and the railroad company was not pleaded, and no point was specially made of this discharge, signed by the widow personally and as tutrix.

The following receipt was produced, and is in evidence in the following words:

"In consideration of the sum of seven hundred dollars, to me in hand paid by the New Orleans & Carrollton R. R. Co., do hereby release and forever discharge said New Orleans & Carrollton R. R. Co. from any and all actions, causes of actions, claims and demands for, upon or by reason of any damage, loss or injury, which heretofore have been, or which hereafter may be sustained by me in consequence of death of my husband E. Singleterry, caused by electrical accident on St. Charles Ave. near Peniston St., New Orleans, on Aug. 23rd, 1899.

"It being further agreed and understood, that the payment of said sum of $700 (Seven Hundred Dollars) is not to be construed as an admission on the part of said New Orleans & Carrollton R. R. Co. of any liability whatever in consequence of said accident.

"In witness whereof I have hereunto set my hand and seal this 1st day of September, Eighteen Hundred and Ninety-Nine.

"Signed and sealed in the presence of for myself as widow and natural tutrix of my child.

"[Signed]     Lettie Singleterry. [Seal.]"

Our attention is invited to the fact, as contended by defendant in argument, that in the body of the receipt no reference is made to damages sustained by the child for the loss of the father; that the words "for myself as widow and natural tutrix of my child" are added to the signature.

Plaintiff, in reply, points to the allegation of the answer, which is, in substance, that the payment was made to the widow and natural tutrix of the minor child, and that defendant alleges that it resulted in obtaining a complete release for all liability. It remains it did not, although it so purports.

The defendant insurance company, in the suit in which it was cast, does in the answer allege:

"Respondent further avers that said Lettie Thompson, widow and tutrix, had an action in her dual capacity as surviving widow and natural tutrix, and when respondent paid the aforesaid seven hundred dollars the same secured the release of said Lettie Thompson as surviving widow, even if in law her release as natural tutrix was not good and binding; and respondent further avers that said release was pleaded in said suit and was further allowed in mitigation of damages or a release pro tanto; that in this release said petitioner joined and acquiesced, and therefore respondent was and is entitled to a credit or payment under its policy of said seven hundred dollars."

We infer from the foregoing that the insurance company's intention was to obtain a complete release from liability in paying the amount the receipt shows. There is a statement to that effect at the end of the receipt, and this view is sustained by the answer quoted.

Whatever may have been the extent of the widow's claim personally, it was paid. The minor was not paid, as it turned out in the end, although the name of tutrix was appended to the receipt. The insurance company evidently intended the payment of minor and widow, but it fell short of accomplishing its purpose by not satisfying itself that the mother had not been qualified as tutrix.

The assurer must produce proof that proper payment has been made. If the company, in settling with one of the claimants, pays another illegally without obtaining legal evidence of the fact of payment, it cannot be heard to recover the amount thus illegally paid.

The railroad company's consent was not obtained prior to the compromise with the widow personally as before mentioned. This we infer from the testimony of the vice president, viz.:

"After that I spent, I think, two days and two nights gathering up testimony of every kind, and these papers, after they were gathered, were sent to Warner and Black, the agents. * * * This lasted a little while. Then we received a number of receipts or copies from Warner and Black, agents of the Maryland Co., that they had compromised a great many cases, and among the number was this of Singleterry."

This does not indicate notice to the company, but, as we think, leads to a contrary inference.

It is not possible to pay claims privately, and insist afterward upon the defense of a pending suit, and, if it results unfavorably and losingly, as in this case, then seek to recoup the loss by deducting the amount of

a private claim, which was muddled with another claim which was not due to the widow and mother, to whom it was paid.

We have no hesitation in arriving at the conclusion that the insurance company should not be held liable for having declined in good faith to accept the terms of a compromise, which was less than the amount of the judgment subsequently rendered; but we do not think we should go further, and hold that the insurance company can make private compromises with claimants, and charge the amount as a credit in the suit in which the insured seeks to recover and sue on the policy it holds.

The court will not make a compromise for the parties by deciding, say, one-fourth, or one-half, or any other proportion, as having been paid without right. We must say that the widow acted in very bad faith in the matter.

Before leaving this subject, we will state that unquestionably the widow had rights in her own name. See Eichorn v. New Orleans & Carrollton Railroad Light & Power Company, 112 La. 236, 36 South. 335. The extent of these rights is not shown.

We have seen that as to the one claim of the widow the insurance company was slightly hasty in accepting an offer of compromise. As relates to the claim of defendant we are about to consider, the insurance company was not only slow, but entirely unwilling, to compromise.

Plaintiff, the insurer, was formerly informed of an offer of compromise for $800, and the insured urged the insurer to accept. This presents the next ground of contention. Parties must be held bound as they choose to bind themselves. Negotiations and settlements of suits were left to the insurer. It (the insurer) has the right to decide upon the advisability of resisting the payment of a claim in suit, and the plaintiff appears to have consented not to interfere. The clause of the policy upon this subject has the appearance of being full and clear enough. It (the insurer) reserved the right absolutely not to be interfered with in settlements of suits. This it exercised.

With the rights stipulated in the contract of insurance it had authority to refuse to compromise without apprehension of being held for the difference, if thereafter cast by judgment in a larger amount than that at which compromise was offered.

Rumford v. Fidelity & Casualty Co. (Me.) 43 Atl. 503, is persuasive upon the point, and holds that the insurer is not liable in the event the amount of the judgment exceed the amount secured by the policy.

True, the insured must be held to good faith and intelligent action in the premises. Nothing here indicates to the contrary.

Where a party insurer declines to pay, as in this case, and it results, as here, in a difference of only $500, and it appearing, to use a common expression, that the insurer had a "fighting chance" in defending, we do not think there is ground to charge him with this difference.

At any rate, in order to be on defending grounds the assured would have to prove not only that it protested against defending the suit, but that it absolutely declined to have anything to do with the defense. This we do not understand is the case, and therefore we must decline to remand in order to enable the assured to prove the character and the extent to which it went in order to influence the insurance company to accept the offer to compromise in question. Under the views before expressed, plaintiff's conduct in the premises bars it from sustaining an action for the difference in question.

It is ordered, adjudged, and decreed that the rule nisi be recalled and discharged.

The demand of relator is rejected, and relator's petition is dismissed.