166 So.2d 747 (1964)
Charles N. WOOTEN, Trustee, Plaintiff-Relator,
v.
CENTRAL MUTUAL INSURANCE COMPANY, Defendant-Respondent.
No. 1234.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1964.
*748 Simon & Trice, by J. Minos Simon, Lafayette, for plaintiff-relator.
Mouton, Champagne & Colomb, by George J. Champagne, Jr., Lafayette, for defendant-respondent.
En Banc.
TATE, Judge.
The present suit was filed in Vermilion Parish. The District Court sustained exceptions based on the contention that Vermilion was an improper venue, and it therefore ordered the suit to be transferred to East Baton Rouge Parish as the court of proper venue. LSA-C.C.P. Art. 121. Supervisory writs were issued to review the trial court's holding that Vermilion was not a proper venue.
The plaintiff is the trustee in bankruptcy for Gordon Paul Bourque, who filed a voluntary petition in bankruptcy after a large tort judgment had been secured against him. For present purposes, it does not appear to be contested that the trustee is vested with any cause of action of the bankrupt pleaded herein (8 C.J.S. Bankruptcy §§ 168, 194), and that the trustee is entitled to institute same in the same courts and at the same venue as if the suit had been instituted by the bankrupt himself prior to his adjudication and the trustee's qualification as such (8A C.J.S. Bankruptcy §§ 348, 358 and 489). See 11 U.S.C.A. § 110, sub. a(5), (6).
The question, then, will be whether Vermilion Parish is a proper venue for Bourque's *749 cause of action pleaded by the present suit.
The present defendant is the automobile liability insurer of the bankrupt Bourque on the date he was involved in an accident prior to his bankruptcy. The plaintiff trustee's cause of action is based upon the loss caused the bankrupt by the defendant insurer's allegedly unreasonable refusal to compromise a claim against Bourque, its insured, for injuries caused a third person, Mrs. Touchet, through Bourque's negligent operation of the insured automobile.
In a prior suit, Mrs. Touchet, the injured person, sued Bourque to recover personal injury damages alleged in the amount of $35,000. According to the allegations of the present suit, Mrs. Touchet had offered to compromise this prior suit with the defendant for the five thousand policy limits, but the defendant refused the offer, and judgment was thereafter secured by Mrs. Touchet against Bourque for $15,000, with the recovery against the insurer being limited to its $5,000 policy limits.
The trustee for Bourque now sues the defendant insurer to recover the ten thousand dollars in excess of policy limits recovered by Mrs. Touchet.
The plaintiff trustee alleges that, in view of the extensive physical injuries sustained by Mrs. Touchet and of the undisputable liability of Bourque, the refusal of the insurer to accept an unconditional offer of settlement for policy limits, constituted "a breach of its contractual obligation to the said Gordon T. Bourque to defend, protect and indemnify him against such liability arising from his gross negligence; petitioner further alleges that said refusal to accept said unconditional offer of settlement resulted either from the arbitrary and capricious conduct of said Central Mutual Insurance Company [defendant herein] or as a result of its gross neglect." Art. 6 of petition.
The defendant insurer contends that the proper venue is that set forth by LSA-C.C.P. Art. 42, the general venue provision, which pertinently states, 42(7), that an action against "A foreign or alien insurer shall be brought in the parish of East Baton Rouge."
The general venue provisions are specifically made subject to certain exceptions. LSA-C.C.P. Art. 43. Plaintiff especially relies upon the exception provided by LSA-C.C.P. Art. 76, that "* * * An action on * * * [a liability] insurance policy may be brought in the parish where the loss occurred or where the insured is domiciled." (Italics ours.) The plaintiff points out that Bourque, the insured, is and always has been a resident of Vermilion Parish.
To determine whether for venue purposes the present action is "on" the insurance contract, involves essentially the determination: Is the present action on a contract, i.e., for the breach of a special obligation, owed to the plaintiff-obligee by virtue of a contract between him and the defendantobligor?; or, Is the action instead in tort, i.e., for the violation of a general duty owed to all persons? For distinction between tort and breach of contract damages, see Davis v. LeBlanc, La.App. 3 Cir., 149 So.2d 252, and the authorities therein cited. (But we should note also that a breach of a contractual obligation may well give rise to actions both on the contract and in tort; the petition therefore must in such instance be examined as a whole to determine whether the action sounds in tort or in contract. Davis v. LeBlanc, cited above. See also Edward Levy Metals, Inc. v. Public Belt R., 243 La. 860, 148 So.2d 580.)
As noted by the comprehensive annotation cited at the conclusion of this paragraph, liability policies ordinarily reserve to the insurer the decision as to whether an offer to compromise a claim against the insured should be accepted. In the exercise of the insurer's right to accept or reject an offer of compromise, there may be a conflict in the interests of the insurer and the insured, if an action is instituted against the insurer for an amount in excess of the *750 policy coverage, and if an offer to compromise this claim is received for a figure close to or at the policy limits. Where the insurer exercises its exclusive power to reject a reasonable offer of compromise which is to the obvious best interest of its insured, and judgment is obtained in excess of the policy limits, the insurer may be held liable to its insured for the excess. See 7A Appleman's Insurance Law and Practice, Sections 4711, 4712, 4713. As stated in the Annotation, "Duty of liability insurer to settle or compromise", 40 A.L.R.2d 168, 171:
"* * * [I]t is probably the accepted rule in all jurisdictions at this time, that the insurer is bound to give some consideration to the insured's interest in such a situation [where an offer to settle at or near the policy limits is received], and the pronounced split in the decisions involves the question whether the insurer's obligations is only to act in `good faith' to the insured in considering such an offer, or whether it is required to exercise `due care' and is liable for a negligent rejection of the compromise."
Only three Louisiana cases have touched upon the question, and they have indicated that an insurer may be held liable in excess of its policy limits where the insurer's failure to settle is not in good faith and is arbitrary under the circumstances. New Orleans & C.R. Co. v. Maryland Casualty Co., 114 La. 153, 38 So. 89 (1905); Stewart v. Wood, La.App. 1 Cir., 153 So.2d 497 (1963); Davis v. Maryland Casualty Co., 2 Cir., 16 La.App. 253, 133 So. 769 (1931).
These Louisiana cases do not, however, concern themselves with whether the action on behalf of the insured in such instances is for a tort, as distinguished from for a breach of a contractual obligation, the question with which we are now concerned.
It is probably fair to state that, in the other American jurisdictions, the greatly preponderant earlier jurisprudence was to the effect that an insurer's liability for its unwarranted failure to effect a settlement did not result from a breach of an obligation of the insurance contract itself; the decisions held that a claim based upon such a cause of action sounded in tort. Annotations, 71 A.L.R. 1467 at 1485-1486, and 131 A.L.R. 1499 at 1500; see also Carne v. Maryland Cas. Co., 208 Tenn. 403, 346 S.W. 2d 259 (1961). Nevertheless, some of the more recent decisions have held that such a claim may be based either on the contract or in tort. Comunale v. Traders & Gen. Ins. Co., 50 Cal.2d 654, 328 P.2d 198, 68 A.L. R.2d 883 (1958); Waters v. American Cas. Co., 261 Ala. 252, 73 So.2d 524 (1954); Abrams v. Factory Mut. Liability Ins. Co., 298 Mass. 141, 10 N.E.2d 82 (1937).
In our opinion, these latter decisions are the more persuasive and the better reasoned, and they are more in accord with the general Louisiana jurisprudence summarized in Davis v. LeBlanc, La.App. 3 Cir., 149 So.2d 252, concerning the distinction between contractual or special duties on the one hand, and tort or general duties on the other.
The cited Comunale decision, for instance, recognized that the wrongful refusal to settle has generally been ercognized as a tort, but then stated that (as in Louisiana) "where a case sounds both in contract and tort the plaintiff will ordinarily have freedom of election between an action of tort and one of contract." 328 P.2d 203. The court there held that the cause of action on behalf of the insured was on the written contract of insurance, and thus was not prescribed as subject to the shorter prescription applicable to unwritten obligations implied by law (such as torts).
In so holding, the court pointed out the insurer has the contractual right to exclusive control of the settlement and litigation of claims against its insured, as a result of which it was liable to its insured for the improper exercise of this contractual right. Basically, as a matter of contract, this resulted from an implied covenant in the insurance contract:
*751 "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement * * * [T]he implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose such a duty. * * * [An] unwarranted refusal to do so constitutes a breach of the implied covenant of good faith and fair dealing. * * * The policy limits * * * do not restrict the damages recoverable by the insured for a breach of contract by the insurer." 328 P.2d 200-201.
To the same effect, the Alabama court in the cited Waters case points out that, for a failure to settle when reasonably indicated, an insurer may be liable in tort for the breach of its general duty to exercise ordinary diligence to prevent harm to others; but that such insurer may also under similar circumstances be liable to its insured in contract for its bad faith failure to exercise reasonably its exclusive contractual power to settle claims: for the insurer's exclusive contractual right to settle imposes upon it a corresponding contractual duty not to exercise such right to the unreasonable detriment of its insured. 73 So.2d 528-529, 531-532.
Similarly, in the cited Abrams case, the Massachusetts court held that the insurer's exclusive settlement-control under the contract, gives rise to a contractual obligation to use such contractual-security rights to the extent required for its own protection, but not to the extent of an unreasonable or negligent sacrifice of the rights of its insured. 298 Mass. 141, 10 N.E.2d 84. The court indicated that the insurer's failure to perform this contractual obligation gave rise to an action in contract, whereas its negligent performance of this duty also gave rise to an action in tort.
As these cases indicate, we believe that the contractual grant to the insurer of settlement-control rights in order to protect its interests in proper cases, gives rise to a corresponding contractual obligation implied from the contract that the insurer will not use these settlement-control rights to the unnecessary detriment of its insured where the insurer's own interests are not substantially involved, such being an exercise of the contractual controlrights for a purpose not intended by the contract. An unwarranted refusal by the insurer to accept a settlement offer within the policy limits may therefore constitute a breach of this implied covenant of the contract, for which breach the insurer may be liable in contract for the damages of the excess of its policy limits, if the insured is so cast because of the insurer's unwarranted refusal to settle within policy limits.
With regard to the question presently before this court, the determination of whether Vermilion Parish is a proper venue for this suit hinges upon whether the cause of action, as pleaded by the plaintiff's petition, is "on" the insurance contract, as being to recover for breach of a contractual obligation owed specially to the insured. If so, the plaintiff properly brought this action in the parish of the insured's domicile.
Herein, the plaintiff specifically alleges that the defendant insurer breached its contractual obligation to protect its insured against liability for negligent operation of the insured vehicle, in that the insurer arbitrarily and negligently refused to accept an unconditional offer of settlement within the policy limits, where there was no reasonable defense against a judgment in an amount well in excess of the policy limits. These allegations, in our opinion, adequately state an action on the insurance contracti.e., one based upon the breach of an obligation of the contract, which created a special duty of the insurer to the insured.
That the same conduct may also have constituted a torta violation of a general duty to use ordinary care not to harm anyone unreasonably, is immaterial *752 for present purposes, where the thrust of this suit's allegations is directed towards the insurer's breach of a special duty to the insured arising from the contractual relationship between the two. See Edward Levy Metals, Inc. v. New Orleans Pub. Belt R., 243 La. 860, 148 So.2d 580; 1 Am. Jur.2d "Actions", Section 32, p. 567.
Since the petition alleges an action on the insurance policy, the present suit was properly brought in Vermilion Parish, the parish of the insured's domicile. LSA-C.C.P. Art. 76.
We should here note that no contention is made that such might also be a proper venue under LSA-C.C.P. Art. 74 (relating to tort suits, which may be brought "in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained"), and we express no opinion either way as to this. Nor, in view of our determination that Vermilion as a parish of the insured's domicile is a proper venue, do we have occasion to discuss whether or not such parish might also be a proper venue for this suit under LSA-C.C.P. Art. 76, insofar as the action was brought on an insurance policy, as being the parish "where the loss occurred".
For the foregoing reasons, the defendant's exceptions are overruled insofar as based upon the contention that Vermilion Parish is not a proper venue for the present suit; and this case is remanded for further proceedings not inconsistent with the views expressed herein. All costs of these supervisory proceedings are assessed against the defendant-respondent; all other costs to await final disposition of the case.
Exceptions overruled and case remanded.