174 So.2d 672 (1965)
Robert YOUNGER, Plaintiff-Appellant,
v.
LUMBERMENS MUTUAL CASUALTY COMPANY, Defendant-Appellee.
No. 1401.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1965.
Rehearing Denied May 19, 1965.
Writ Refused June 28, 1965.
*673 Simon & Trice, by Phil Trice, Lafayette, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe, by J. J. Davidson, Jr., Lafayette, for defendant-appellee.
*674 TATE, Judge.
The present action is a sequel to Younger v. Bonin, La.App. 3 Cir., 149 So.2d 452, writs denied, 244 La. 150, 150 So.2d 769. (See also Lumbermens Mutual Cas. Co. v. Younger, La.App. 3 Cir., 158 So.2d 341.)
In the original litigation, the plaintiff obtained judgment in excess of $17,000 for personal injuries sustained by his minor daughter, Darlene, and for the medical expenses thereby occasioned. The liability of Lumbermens, the defendant driver's insurer, was limited to $5,000, its policy limits. 149 So.2d 452.
In the present suit, Younger seeks to recover from Lumbermens the amount of the judgment rendered in excess of the policy limits. The plaintiff Younger's action is based upon an assignment obtained by him from Mrs. Bonin, the defendant in the original suit (and Lumbermens' insured), of her cause of action for damages resulting from her own insurer's allegedly improper refusal to settle the plaintiff's claim against her within policy limits prior to the rendition of judgment casting Mrs. Bonin individually for damages some $12,000 in excess of the policy limits. This suit was dismissed upon an exception of no cause of action, and the plaintiff appeals.
The specified basis of the exception of no cause of action sustained by the trial court is that Mrs. Bonin had sustained no loss or damage as a result of the judgment rendered against her because Younger had been unable to collect any amounts from her, she being propertyless. At the oral argument of this appeal, prior to submission of the case in this court, see LSA-C.C.P. Art. 2163, the defendant's counsel was granted leave to file an exception of no cause of action additionally alleging as ground that, on the basis of this record, the actions of the defendant insurer in rejecting settlement offers were not arbitrary or capricious so as to make it liable to its insured (Mrs. Bonin) for an unwarranted refusal to accept a compromise offer slightly less than its policy limits, which was made to it by plaintiff's counsel prior to trial.
We find it unnecessary to discuss the other contentions raised by the defendant's exception of no cause of action, because we have decided that the exception should be sustained on this last specified ground. The allegations of the plaintiff's petition are admitted as true for purposes of the exception, and the plaintiff's petition incorporated by reference the entire record of the original litigation upon which the present cause of action is founded. Both parties are willing to concede that for purposes of this appeal we have the entire evidence or showing necessary to pass upon the essential merits of the demand, namely, whether the plaintiff as Mrs. Bonin's assignee can prove a cause of action based upon the defendant insurer's failure to accept prior to trial a compromise offer to settle the claim against Mrs. Bonin for slightly less than policy limits.

I.
The four Louisiana cases which have touched on the question have indicated that an insurer may be held liable to its insured for the excess of the policy limits for which the insured is cast, where the insurer's failure to accept an offer of compromise within policy limits is not in good faith or is arbitrary under the circumstances. New Orleans & C. R. Co. v. Maryland Casualty Co., 114 La. 153, 38 So. 89, 6 L.R.A.,N.S., 562; Wooten v. Central Mutual Ins. Co., La.App. 3 Cir., 166 So.2d 747; Stewart v. Wood, La.App. 1 Cir., 153 So.2d 497; Davis v. Maryland Casualty Co., 2 Cir., 16 La.App. 253, 133 So. 769.
None of these cases, however, discussed the standard of conduct by reason of which an insurer might become liable for the excess of policy limits. There is, however, *675 a full discussion at 7A Appleman, Insurance Law and Practice (1962 ed.), Sections 4711-4713 (pp. 551 et seq.), and also in the Annotation, "Duty of liability insurer to settle or compromise", 40 ALR2d 168. In the absence of Louisiana jurisprudence on the question, we quote freely from the conclusions of the Appleman treatise concerning the nature and general criteria of liability in such circumstances, based upon the jurisprudence concerning the question when it has arisen in the other American jurisdictions.
Both the Appleman treatise and the cited annotation note that the cases are divided upon whether the liability is founded on a "good-faith" concept of the duty owed by the insurer to the insured, or instead upon a "negligence test", whereby the insured's liability is founded upon a question of due care under the circumstances. However, as stated at 7A Appleman, Section 4712, pp. 576, 578: "* * * many decisions, representative of many jurisdictions, have coupled in their discussions the terms `bad faith' and `negligence', seeming to use them as disjunctive or alternative tests. It is partly on this accountalso partly because the same states will occasionally refer to one test and upon other occasions to the otherthat the conclusion must be drawn that mere terminology means little. It is rather the factual situation which is significant in the light of the duty which exists, * * *."
The Appleman treatise, cited above, speaks of the basis of the liability as follows, Section 4711 at p. 553: "It is not sufficient for the insurer to consult its own self-interest. As a professional in the defense of suits, it must use a degree of skill commensurate with such professional standards. As the champion of the insured, it must consider as paramount his interests, rather than its own, and may not gamble with his funds. Its relationship is somewhat of a fiduciary one, and the liability is greater than indicated by some of the earlier holdings. Thus, if the insurer refuses to settle a claim because it believes that the insured is not liable, it is nevertheless answerable for such refusal if its belief was arbitrary or capricious."
Again, the treatise summarizes the standard of the insurer's duty as follows, Section 4712 at p. 562: "Some courts, in weighing the responsibilities of the liability insurer, speak of bad faith; some speak of negligence; others use the two terms interchangeably. And, in truth, they are to some extent interchangeable. The insurer, as a professional defender of lawsuits, is held to a standard higher than that of an unskilled practitioner. What might be ignorance in his instance may be unforgivable oversight of the insurer; what might be neglect in his instance could well constitute bad faith on the part of the insurer. The question is always: `Did the insurer exercise that degree of skill, judgment, and consideration for the welfare of the insured which it, as a skilled professional defender of lawsuits having sole charge of the investigation, settlement, and trial of the suit may have been expected to utilize?' If it did, there is no problem; it is not liable. If it did not, then a court could easily describe its conduct as being negligent, or as not in accordance with the high duty of good faith which it owed to its insured."
The Annotation at 40 ALR2d 168 discusses some of the factors relied upon by the courts in assessing the liability or not of an insurer for an allegedly unreasonable refusal to settle a claim against its insured within policy limits. The criteria include: issues of liability and damages in the original action by the claimant against the insured (Section 10 of annotation), the insurer's failure to investigate and ascertain facts (Section 13), the insurer's rejection of the advice of its own attorney or agent (Section 14), the rejection of a compromise offer made after a trial verdict against the insured (Section *676 15)[1], a failure to inform the insured of the compromise offer (Section 17), the fault of the insured in influencing the insurer's rejection of the compromise offer or the insured's concurrence in the rejection of the offer (Section 18), and the relative extent of the risk of excess judgment to which the insured is subjected as compared with the insurer's exposure to liability or the relative amounts of excess and policy-limit judgments to which the insured and insurer respectively are exposed (Section 20).

II.
The original litigation, see 149 So.2d 452 (Docket No. 744 of this court), grew out of an accident in which the plaintiff's nine-year-old daughter Darlene was struck by an automobile driven by Mrs. Bonin, Lumbermens' insured. Darlene was crossing the street from a store.
Mrs. Bonin claimed that Darlene was struck just as the little girl had run out in front of Mrs. Bonin's vehicle from behind some parked cars; under this version, Mrs. Bonin of course was free of fault. On the other hand, both the trial and appellate courts accepted instead Darlene's version of the accident, according to which the girl had completed crossing the street from the store and was struck at the left edge of Mrs. Bonin's left lane; under which version, Mrs. Bonin's fault in striking the child at the far edge of the road and in the driver's wrong lane of traffic was obviously the sole proximate cause of the accident.
The plaintiff claims with considerable force that the defendant insurer unreasonably refused to accept the plaintiff's offer to settle the present suit for less than policy limits and thus unreasonably exposed its insured (Mrs. Bonin) to a judgment for the excess, based upon the following circumstances:
1. The undoubted fact that Darlene's injuries entitled her to a judgment well in excess of policy limits, if indeed Mrs. Bonin was negligent and her negligence was the sole proximate cause of the accident.
2. The facts alleged by the plaintiff's petition in the present suit, accepted as true for purposes of this exception, that, before trial, the plaintiff offered to settle the original suit for $4,500, or less than the policy limits of $5,000, which offer was refused by the defendant insurer.
3. The facts alleged also that Mrs. Bonin, the insured, was never informed of the possibility that judgment might be rendered holding her personally liable in excess of the $5,000 policy limits, nor was she informed of the offers to compromise within policy limits, "and that if she had been so instructed and informed, whether or not she would have been willing to confess that she was wholly at fault, she would have urged that said compromise offers be accepted."
4. The physical facts of the accident allegedly corroborated Darlene's version completely, in that she was found on Mrs. Bonin's extreme left edge of the pavement, with a broken bottle and store merchandise near her, while Mrs. Bonin's car was found by the policeman in the left lane 32 feet past Darlene, with 6 feet of skidmarks immediately prior to the vehicle where it had stopped some 32 feet beyond the little girl.
5. The alleged impossibility of Mrs. Bonin's version of the accident that she had struck Darlene in the right lane some 45 feet south of where Darlene came to rest at the extreme left edge of the pavement, said alleged point of impact being perhaps 77 feet south of where Mrs. Bonin's car finally came to rest, with brake skidmarks not made until some 71 feet *677 past the place where Mrs. Bonin testified the impact had occurred.
These circumstances undoubtedly add up to a very strong case indicating that the defendant insurer should reasonably have realized that it was very probable that judgment would be rendered against it and in favor of Darlene and her father for an amount well in excess of the policy limits, so that the insurer, with exclusive power to compromise the claim, might well have been under a duty to protect its insured from the probability of a personal judgment in excess of policy limits. In addition to this, the jurisprudence indicates that the courts may consider as a factor in the insurer's good faith the insurer's failure to inform its insured of settlement offers where there is a probability of a recovery in excess of policy limits.

III.
On the other hand, the insurer's liability for refusal to accept an offer of settlement is not predicated upon its failure to predict the correct outcome of the action it is defending, but rather upon whether it unreasonably exposes its insured to a judgment in excess of policy limits. The issue involves not only the insurer's reasonable evaluation of the case, but also whether proposed settlements are rejected conscientiously in terms of deliberate judgment evaluation rather than for inadequate or no reason.
In the present instance, we cannot say that the insurer's refusal to settle the claim was arbitrary or unreasonable. The insurer had substantial reason to believe its defense of lack of negligence on Mrs. Bonin's part was well-founded. We refer to the following circumstances:
1. Mrs. Bonin, its insured, consistently, from the first report of the accident to the investigating police officer, right through the trial of the case, insisted that the accident occurred solely because the child ran out suddenly in her path from behind parked cars, a defense which if sustained would have required dismissal of the plaintiff's claim for damages for Darlene's injuries.
2. This version was not inherently improbable, especially since Darlene's version required the courts to believe (as they did) that for some unexplainable reason Mrs. Bonin was driving improperly in the left lane of traffic on a two-way street, which Mrs. Bonin consistently denied. (She explained that her automobile was found on the left side of the street after the accident because she drove it there after hitting the child.)
3. Mrs. Bonin's counsel advanced throughout the trial and the appellate courts a plausible explanation of how Darlene was found on the left side of the street after being struck by the right front of Mrs. Bonin's automobile in the right lane, just after Darlene allegedly ran suddenly into the roadway: That Darlene was hurled across the road by the impact, which was also the reason why the broken bottle and store merchandise she was carrying was found with her, being struck from her clutch only after Darlene hit the ground across the roadway. Neither eyewitness could testify whether or not Darlene had fallen where she was hit or was instead thrown a distance.
4. Consistent with this version, was the fact that Mrs. Bonin claimed the right front of her car was dented by the impact (Tr. 81, Docket No. 744), a physical circumstance inconsistent with Darlene's version of having been struck and knocked to the ground when Darlene was at the left edge of the pavement. (No other proof of this physical fact was educed, and apparently the trial court did not accept it as proved; but the question is not whether the right dent was proved, but instead whether the insurer at the time was justified in relying upon it as a circumstance proving its insured's exculpatory version of the accident was correct so as to reasonably *678 believe it had a valid defense to the claim against it and its insured.)
5. The original version of the accident pleaded by Darlene's counsel (see Tr. 3-4, Docket No. 744) was inconsistent with that to which she testified at the trial, under which original version the young girl was crossing the street from west to east instead of from east to west, which version might be more consistent with the little girl being struck in Mrs. Bonin's right or proper lane of the roadway.
6. The circumstance that Darlene testified that she did not see the car prior to her being hit, although she looked, and also that (in response to specific questions) she did not know whether the car had "bumped me and if it made me fly or whether it rolled over me. I don't remember." (Tr. 72, Docket No. 744.)

IV.
We believe the preponderance of the evidence does indicate that the accident occurred because for some unexplainable reason Mrs. Bonin, driving in her left or improper lane, ran into and struck the little girl at Mrs. Bonin's left edge of the pavement as the little girl had almost completed crossing the street.
In the last analysis, however, there is a direct conflict between the only two eyewitnesses, one of which was the defendant's insured. Each of the two conflicting versions is not either so certainly correct or inherently improbable as reasonably to justify an assumption that the trier of fact, in evaluating the credibility of the opposing versions in the light of the proven physical facts, must inevitably have found either one version or the other to be the correct one.
As the cited Appleman treatise states, "something more than a mere error of judgment is necessary to constitute bad faith, and the insurer cannot be required to predict with exact certitude the result of a closely contested lawsuit. [Section 4712, p. 565] * * * A liability insurer's refusal of a settlement under the bona fide belief that the action might be defeated or the verdict kept within the policy limits, has been held not to constitute bad faith. Nor is such insurer compelled to assume that the jury will believe the injured person's witnesses in preference to its own. [Section 4712, p. 567.]"
Thus, we find that the insurer's defense to the liability vel non was not without a reasonable basis, a substantial factor in determining that the insurer's refusal to accept the compromise offer was not arbitrary or unreasonable under the circumstances.
Additionally, however, we must remember that the present cause of action is that of Mrs. Bonin, the insured (which the present plaintiff is seeking to enforce through an assignment to him of Mrs. Bonin's rights). The insurer's defense to the original suit on behalf of Darlene was based upon Mrs. Bonin's not-improbable version of the accident, to which she consistently adhered from the investigation at the accident scene right through the trial. (There is no allegation that Mrs. Bonin had given inconsistent versions of the accident from which the insurer might reasonably have realized that her trial version was incorrect, nor for instance that she was persuaded to testify to an exculpatory version, although she had doubts as to its correctness or as to her memory of what had transpired; as a result of which the insurer should have advised her of the greater probability that the trial court would reject her version of the accident.)
This is thus not an instance where the insurer should have realized, from the testimony of witnesses known to it but not to its insured, facts which indicated the probable falsity of the insured's exculpatory version of the accident; it is rather an instance where the insurer relied upon the insured's own version of the *679 accident, which was contradicted only by the victim, the only other eyewitness of the incident. "Where the insured has himself misled the insurer as to the facts governing his liability to the claimant, and has thereby induced the rejection of the compromise offer, he will not ordinarily thereafter be heard to complain of the rejection." Annotation, 40 ALR2d 168 at 218 (Section 18).
Undoubtedly, Mrs. Bonin was sincere in her testimony and deeply believed that the accident occurred as she said, even though the courts have found she was in error.
Nevertheless, the insurer's defense to the action was based upon its insured's, Mrs. Bonin's, strong belief and testimony that the accident occurred through no fault on her part, as indeed the trial and appellate courts would have held had they accepted her version as correct. Because Mrs. Bonin's version of the accident is not inherently unreasonable or obviously false, we have found that the insurer was not unwarranted in refusing to accept the compromise offer, since there was therefore a substantial question as to whether it or Mrs. Bonin was liable at all. We do not believe that Mrs. Bonin (or her assignee, the present plaintiff) is in a position now to state that the insurer unreasonably rejected the compromise offer, when this rejection was reasonably based upon the information given it in good faith by Mrs. Bonin, its insured.
Relied upon as a factor in holding an insurer liable for a judgment in excess of the policy limits, has sometimes been the failure of the insurer to inform its insured of compromise offers within policy limits and of the possibility of an exposure of the insured to liability individually in excess of policy limits, a failure alleged to have occurred in the present case. Annotation at 40 ALR2d 216 (Section 17) and citations in subsequent supplements; 7A Appleman's at 568-569 (Section 4712). However, as the cited sources note, such a failure on the part of the insurer does not by itself amount to bad faith or a breach of duty; it is just one of the several factors which might indicate an actionable breach of duty, with the duty greater in this regard the greater the probability of judgment exceeding policy limits, and with each of the several factors to be evaluated in the light of all the circumstances surrounding the rejection of the compromise offer.[2]
Considering all the circumstances in this case, we are unable to say the insurer's failure to keep its insured informed of an offer to compromise within policy limits, even where the insured was clearly exposed to liability in excess of policy limits, amounted to a breach of duty such as to justify a holding of the insurer's bad faith. In this regard, we take into consideration not only that the insurer's defense to liability vel non was not without reasonable basis, but especially that the insured had made adamant, repeated, and consistent statements evidencing her strong and not unreasonable belief that the accident occurred without fault on her part and solely because the little girl ran from behind parked cars into the insured's path at a time when she could not avoid colliding with the child. While the jurisprudence indicates that the better practice is for the insurer to keep its insured informed under such circumstances, nevertheless, under the present facts, the insurer's failure to communicate information of a compromise offer (which it was not necessarily obliged to accept, see Footnote 2 above) was without consequential connection with the reasonableness *680 or not of the insured's rejection of the compromise offer, based upon its own insured's undeviating and not unreasonable version of the accident, which exculpated her from fault if it had been found by the trier of fact to be correct.
For the foregoing reasons, we affirm the judgment of the trial court dismissing this suit upon an exception of no cause of action. The costs of this appeal are to be paid by the plaintiff-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] See also 7A Appleman's Section 4711 at p. 557. However, in the present case, the facts and allegations show that the offer to compromise was made only before adverse verdict and do not indicate it was renewed afterwards.
[2] Indeed, even if the offer is communicated to the insured and the latter then desires its acceptance, the insurer is nevertheless not liable for an excess judgment if it rejects the compromise offer for valid cause and then is cast in judgment with its insured for an amount in excess of the compromise offer. New Orleans & C. R. Co. v. Maryland Casualty Co., 114 La. 153, 38 So. 89.