BAILES, Judge.
In this action the plaintiff sued to recover from defendant the cost of defending a certain tort action brought against both parties herein. In that tort action the plaintiff was an excess insurer of the driver of the motor vehicle on which the defendant was the primary insurer.
There is no question or issue herein as to the fact of the issuance of the policies of insurance or the relationship each had to the other. The plaintiff issued a public liability insurance policy to one Walter C. Welch which by its terms afforded protection and coverage to members of his household, including his son, Walter Welch. By its terms, the coverage extended to any other vehicle operated by the said son.
The defendant was the insurer of one Justin Greer in the operation of a certain Falcon automobile. This policy contained an omnibus clause under which Walter Welch, driver of the Greer Falcon, was construed as an insured in the operation of the said Falcon automobile. This vehicle was involved in an accident which resulted in the death of one person and the injury of several other persons.
Accordingly, plaintiff’s policy is considered and construed as excess coverage, and defendant’s policy as primary coverage.
The defendant, as the primary liability insurer was required to defend the lawsuits arising out of the above cited accident on *775 behalf of Walter Welch and plaintiff. Initially, however, defendant refused to afford a defense of these suits for plaintiff, who, prior to defendant reversing its position and in fact providing plaintiff a defense, had incurred an expense of $784.68 in providing its own defense.
This action is to recover the sum of $5,-254.53, together with legal interest from date of judicial demand. On trial in the lower court proof was offered of a total sum of $3,104.53, however the trial court awarded the plaintiff judgment in the amount of $3,004.53, plus interest as prayed for. Defendant appealed. Plaintiff neither appealed nor answered the appeal.
After defendant undertook plaintiff’s defense, the latter was kept informed at all times by their common counsel of the progress and state of affairs as to the negotiations and progress toward an amicable settlement of the cases.
The maximum protection afforded by defendant’s policy was $200,000. In settlement of all claims the claimants were demanding an aggregate amount of $180,000, however, defendant was of the opinion and belief the claims were worth no more than $150,000.
As a result of the position taken by the defendant in considering the offer of settlement advanced by claimants, all of which was within the knowledge of plaintiff, the latter wrote joint counsel, on July 3, 1963, inter alia, as follows:
“I am happy to see that you can conclude the claims within the $200,000 limits of your client’s policy.
“I urge you to conclude all of the outstanding claims within the policy limits of the primary carrier, Atlantic Mutual Insurance Company.”
In answer to this portion of plaintiff’s letter to joint counsel, Mr. A. R. Christo-vich, on July 23, 1963, wrote plaintiff as follows:
“I have your letter of July 3, 1963, and copy of your letter to your assured Mr. Welch. These letters referred to the fact of a $180,000 demand and ‘urge’ the writer to conclude all claims within the policy limits of Atlantic Mutual Insurance Company. Your letter to Mr. Welch refers to it being ‘up to Atlantic Mutual to settle within their limits.’
“As you know, at your insistance, this office is undertaking defense and representation of Allstate as to excess policy issuer for the accident involved. I am not sure whether the language of your referred to letters intends to indicate any contention on the part of Allstate or Mr. Welch to the effect that Atlantic Mutual might have some excess liability in the event that it would not settle these claims within its policy limits. I believe that this is a point that should be immediately cleared up. Obviously, if Allstate or Mr. Welch would seek to take such a position this office could hardly represent them and Atlantic Mutual. Under such circumstances it would be indicated, as we have always felt, that Mr. Seale should represent Allstate and its insured under the particular circumstances of this litigation.
“Please therefore advise whether Allstate or Mr. Welch intend any claim or contention against Atlantic Mutual referable to question of excess liability and we will be governed accordingly.”
Plaintiff’s reply of August 7, 1963, to the above quoted letter, in part, states:
“As excess carriers, don’t we have the right to urge you and Atlantic Mutual to settle the losses within Atlantic Mutual’s limits ?
“Mr. Christovich, your recent letter seems to indicate that Atlantic owes no duty to defend Allstate and our insured. We just cannot understand this. If there is some legal basis for this position, I would appreciate receiving same, as we are unaware of any.
“Mr. Christovich, please give me a clear, specific answer relative to the position *776 you are going to take in defending Allstate Insurance Company and our insured. I’m sure you understand wliy I am making this request, since we must know just where we stand.”
Joint counsel, Mr. A. R. Christovich, Jr., on August 9, 1963, made the following reply to plaintiff.
“I have your letter of August 7, 1963. The problem that I meant to pose can be very simply stated. I cannot see how this office can at one and the same time represent Atlantic Mutual and within that representation suggest settlement figures well below their policy limits, and at the same time represent Allstate Insurance Company and take the position that Atlantic Mutual should pay its policy limits. “This is the inconsistency which I feel would constitute a conflict should it be Allstate’s position that Atlantic Mutual should pay its policy limits.
“Thus again I must pose the question to Allstate — Does it contend for the proposition that Atlantic Mutual should pay those policy limits? If so, this Office’s opinion to Atlantic Mutual speaks for itself in illustrating a conflict of thinking as between Atlantic Mutual and Allstate. If such conflict does exist and we again ask that you either confirm it or state to the contrary, once again we suggest that Allstate should have its own counsel again become active in the matter.”
Defendant received no reply to the letter addressed to plaintiff on August 9, 1963, last quoted above. In place of discussing the basis for plaintiff’s admonition to defendant to settle the claims within the defendant’s policy limits, such as the question of lack of good faith negotiations or arbitrariness in refusing to settle, as these are possible legal reasons for holding an insurer liable for not settling within policy limits (See New Orleans & C. R. Co. v. Maryland Casualty Co., 114 La. 153, 38 So. 89, 6 L.R.A.,N.S., 562; Wooten v. Central Mutual Insurance Co., La.App., 3 Cir., 166 So.2d 747; Stewart v. Wood, La.App., 1 Cir., 153 So.2d 497; Davis v. Maryland Casualty Co., 2 Cir., 16 La.App. 253, 133 So. 769, plaintiff had its own counsel become active again in the case until the litigation was finally and successfully concluded within the policy limits of the defendant. These later services procured by plaintiff amounted to the sum of $2,319.85.
The trial court, in rendering judgment in favor of the plaintiff, held the letters written by Mr. Christovich to plaintiff as tantamount to his withdrawal as counsel for plaintiff. It held such withdrawal was premature because the cases did not go to trial and were finally settled by compromise within limits of defendant’s policy.
The record before us clearly reflects defendant did not, at any time after it assumed the defense of the claim against plaintiff, refuse, abandon or withdraw from such defense. The plaintiff did inject a conflict of interest into the joint representation by demanding a settlement within the policy limits. Certainly defendant was under no obligation to pay any amount under its policy and would not be liable to plaintiff for such action unless its actions lacked good faith or it acted arbitrarily. The plaintiff, for reasons perhaps better known to itself, for the record is devoid of any legal reason, assumed the defense of the claim against it. This action, and the incurring of the expense of attorney fees in the amount of $2,319.85 was entirely voluntary on its part. In the absence of some action on the part of the defendant equivalent to an abandonment of its defense or a notice from defendant for plaintiff to obtain its own counsel, all of which is absent in this case, the action of plaintiff was voluntary on its part.
Defendant cites and relies on the case of Maryland Casualty Co. v. Marquette Casualty Co. (1962) La.App., 143 So.2d 249, as controlling of the issue involved herein. Briefly stated, the cited case involves an action by an employer’s excess insurer against its employee’s liability insurer to recover amounts expended in settlement of *777 a suit against employer and for attorney’s fees and costs. Plaintiff, Maryland Casualty Company, was the insured of Gulf Engineering Co., Inc., the employer and defendant, Marquette Casualty Company, was the insurer of a pickup truck of the employee, Mayo. Mayo struck and injured a child. tThe child’s father brought suit against Mayo and Gulf Engineering Company, Inc. for damages. On being cited in that lawsuit, Gulf Engineering Company, Inc., forwarded the citation and petition to Marquette Casualty Company and requested the said insurer make defense on its behalf. Marquette refused to do so and returned the citation and petition. Marquette did defend Mayo, however. In settling the litigation for less than the policy limits of Marquette, Maryland was forced to contribute $250 in the settlement for settlement of the plaintiff’s claim against Gulf Engineering Company, Inc. Maryland claimed Marquette was liable for the $250 which was paid on behalf of Gulf in the settlement, and also for $294 which was expended in defending Gulf in the suit. The question decided in this cited case is whether Maryland had the right to recover the expended amount from Marquette. The court therein stated on page 250 “[1] An employer as an omnibus insured is protected by a liability policy issued to an employee on his personal vehicle when the same is driven by the employee in the course and scope of his employment. Therefore, Gulf Engineering Company, Inc., was covered under the Marquette policy. * * And, on page 251, the court continued: “[2] * * * By having failed to honor its contractual duty of defending the lawsuit on behalf of Gulf, Marquette became indebted unto Gulf for the cost of the defense, and Gulf’s claim against Marquette passed to Maryland under the subrogation clauses of that insurer’s policy, * *
It was possibly on the basis of this cited suit that the defendant ultimately did in fact undertake the defense of the action brought against the excess insurer, the plaintiff, and it is probably under the rationale of this cited case that the defendant has acknowledged liability and agreed to pay the plaintiff’s cost of defense up to the time it undertook the defense of the action on behalf of the plaintiff, this amount being $784.68.
However, this cited case is inapposite to the question before us herein. Whether there was actually a conflict of interest, and the legal duty owed by defendant to plaintiff in the- event there was a conflict of interest is not before us because the plaintiff engaged its own counsel at a time when defendant was actively fulfilling its obligation under its policy of insurance and as primary insurer.
Plaintiff cited in its brief the cases of Shehee-Ford Wagon and Harness Company, Inc. v. Continental Casualty Company, La.App., 170 So. 249; Smith v. Insurance Company of the State of Pennsylvania, La.App., 161 So.2d 903; Standard Surety & Casualty Co. of N. Y. v. Perrin, La.App., 19 So.2d 783; and Kansas v. Sun Indemnity Co. of N. Y., La.App., 37 So.2d 621, however find all of these cases not apropos to the issue before us herein.
Under the circumstances shown in this case, we find no basis, either in law or in fact, for assessing the cost incurred by plaintiff in defending itself in the tort action against defendant.
It was stipulated by the parties that the plaintiff had expended the sum of $784.68 in defense of the tort action before defendant undertook its duty to defend plaintiff, and defendant admits it owes that amount to the plaintiff.
For the foregoing reasons, the judgment of the trial court is amended to reduce the amount of recovery to plaintiff to the sum of $784.68, and costs of the trial court. Accordingly, there is judgment herein in favor of plaintiff and against defendant in and for the sum of $784.68, together with legal interest thereon from date of judicial demand until paid. Costs of this appeal to be paid by plaintiff.
Amended and affirmed.